## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO:

ADAM DEPASQUA, individually and
on behalf of all others similarly situated

                  Plaintiff,                  **CLASS REPRESENTATION**

vs.                                      **JURY TRIAL DEMANDED**

TRUMP NATIONAL COMMITTEE
JFC, INC.,

                  Defendant.
_____/

### CLASS ACTION COMPLAINT

Plaintiff, ADAM DEPASQUA (hereinafter "Plaintiff"), brings this class action against TRUMP NATIONAL COMMITTEE JFC, INC. (hereinafter "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., (hereinafter the "TCPA"), the Florida Telephone Solicitation Act, § 501.059 (hereinafter "the FTSA"), and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

### INTRODUCTION

1.     Plaintiff brings this Class Action Complaint for damages, injunctive relief, and all other available legal or equitable remedies, resulting from Defendant's

unlawful actions in negligently and/or willfully contacting Plaintiff on Plaintiff's personal residential cellular telephone, thereby invading Plaintiff's privacy.

2.      To promote and market its products and services, and to solicit money, Defendant, directly or through persons on its behalf, sends text message solicitations to individuals whose telephone numbers are registered on the National Do-Not-Call Registry ("DNC"), and to persons who have requested to no longer be contacted.

3.      Defendant violates Fla. Stat. § 501.059, 47 C.F.R. 64.1200(c) and (d) by failing to honor opt-out instructions.

4.      Plaintiff and Class Members received unwanted spam telemarketing text messages from Defendant without regard to the FTSA, the TCPA, and for individual privacy.

5.      This lawsuit challenges all telemarketing text messages that were sent by Defendant, or on Defendant's behalf, to Plaintiff and Class Members from approximately July 2021, through the date of preliminary approval of class certification.

6.      The FTSA and TCPA were designed to prevent telemarketing text messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff and the Class. The Federal Communications Commission (FCC) reports that unwanted calls and texts constitute its top consumer complaint and top consumer protection priority. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021),

https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited May 21, 2025).

## JURISDICTION AND VENUE

7.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, and supplemental jurisdiction over Plaintiff's state law claims.

8.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission of the unlawful and unwanted texts to Plaintiff in this District.

9.     Plaintiff resides in Volusia County, Florida, where the subject text messages were received on his DNC registered Florida area code telephone number, within the jurisdiction of this Court.

10.     The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, and has availed itself to the jurisdiction of this state by placing calls to Plaintiff and Class Members in this state on the Florida area code telephone numbers.

## PARTIES

11.     Plaintiff's domicile is in Volusia County, Florida. Plaintiff is a citizen of the State of Florida.

12.     Defendant is a corporation organized in the State of Virginia. Its registered agent is Corporation Service Company, 100 Shockoe Slip FL 2, Richmond, Virginia, 23219.

13.     Defendant is a political action organization that solicits and collects money, and pays fundraising expenses and disburses net proceeds for two or more organizations, none of which is an authorized committee of a federal candidate, including the Republican National Committee and Never Surrender, Inc.

14.     Defendant received money from individuals totaling over $471 million in 2024 alone. Defendant solicits money from individuals through various methods, including by sending unsolicited text advertisements like the ones at issue in this Complaint.

15.     In addition to soliciting individuals directly by sending text advertisements, Defendant also uses, encourages, employs, pays, and entices, and authorizes other political organizations and persons to send text messages and to raise money on its behalf.

16.     For example, Defendant permits and authorizes other organizations to use President Trumps name, image, and likeness in exchange for a minimum payment of 5% of all fundraising *solicitations* to be paid to Trump National Committee JFC – "any split higher than 5% will be seen favorably by the RNC and President Trump's campaign . . ."

17.     Defendant also instructs and encourages other organizations to "upsell" Trump branded and/or signed merchandize to encourage individuals to pay for them. Defendant touts that its "seen upsells signed by President Trump have the highest conversation rates and dollars per view. All we ask for is a 1% split on these upsells."

18.     Defendant sells, and authorizes the sale of, Trump branded and/or signed products to promote its goods and services, and to profit from them.

19.     Defendant directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

Plaintiff's Experience.

20.     Plaintiff's personal and residential telephone number ending in 4074 received Defendant's text advertisements. This number is used by Plaintiff for residential purposes and is considered by him to be a residential number.

21.     Plaintiff's full telephone number will be provided directly to counsel for Defendant in discovery. It is not being provided here, a public document, to prevent further misuse of Plaintiff's telephone number.

22.     Plaintiff has received *at least* 20 text advertisements from Defendant, including on the following dates and times:

a.  9/24/2024 at 19:59;

b.  9/27/2024 at 16:30;

c.  9/28/2024 at 13:43;

d.  10/1/2024 at 14:13;

e.  10/1/2024 at 20:46;

f.  10/4/2024 at 14:46;

g.  10/6/2024 at 12:06;

h.  10/20/2024 at 15:23;

i.  10/24/2024 at 19:09;

j.  10/27/2024 at 12:10;

k.  10/27/2024 at 16:49;

l.  10/27/2024 at 19:40;

m. 10/28/2024 at 16:53;

n.  11/1/2024 at 13:49;

o.  11/1/2024 at 19:48;

p.  12/7/2024 at 13:50;

q.  1/9/2025 at 22:54;

r.  1/14/2025 at 13:22;

s.  6/11/2025 at 20:17; and

t.  6/16/2025 at 17:34.

23.    To opt-out of any further telemarketing text communications with Defendant, Plaintiff texted Defendant the word "stop" in response to the above messages, including on September 24, 2024 in direct response to the first text message initiated by Defendant.

24.    Defendant ignored Plaintiff's request(s) and continued to text promotional telemarketing messages despite Plaintiff's clear revocation of any alleged prior consent, including *at least* nineteen (19) post-revocation text messages – thirteen (13) of which more than 10 days after Plaintiff first texted "stop."

25.    Screen shots of some of the telemarketing sent to Plaintiff, including Plaintiff's STOP requests, are depicted below for demonstrative purposes:

10/4/24 2:46:47 PM EDT

I'M NOT SUPPOSED TO BE SENDING THIS!

It's Trump. Read my message before I return to the Butler rally stage!

24 HRS: https://r-txt.co/3drp58ek

Stop to End

10/4/24 2:47:00 PM EDT

STOP

10/20/24 3:23:22 PM EDT

Trump: $5 for a signed ELON MUSK DARK MAGA HAT?

That's not all $5 gets you!

5 reasons to give before my deadline: https://securelink.gop/ RVPHVczYO

Stop =End

10/20/24 3:30:00 PM EDT

STOP

10/28/24 4:53:39 PM EDT

From Trump: FREE GOLD DARK MAGA HAT?

It's almost yours, I just need you to do one thing first: https://47maga.org/ mmdzz

STOP to opt-out

10/28/24 4:53:44 PM EDT

STOP

Defendant Used Windred.com to Solicit Money and Sell Merchandise.

26.    Plaintiff knows these text messages were sent by or on behalf of Defendant because when Plaintiff clicked the hyperlinks in the messages they all directed Plaintiff to Defendant's dedicated and/or paid for landing page on www.winred.com.

27.    All the text messages were sent using Windred.com's software platform. Plaintiff has received over 130 SPAM text messages from various political fundraising organizations using the Windred.com platform. Plaintiff replied STOP to each of these messages. At least 20 of those messages, were sent by or on behalf of Defendant.

28.    Windred.com's FAQ's state that the sender of the text messages using its platform is the political action committee or organization identified in the URL or webpage for the specific organization of the texts – in this case, all of them were from Defendant's URL and/or were paid for, and sought money for, Defendant.

29.    Winred.com is the official secure payments technology platform designed for Republican Party candidates and committees to solicit and collect funds and to sell merchandise online.

30.    The core function of Windred.com is to serve as a platform for promoting political organizations and candidates to raise money and to promote and sell their products.

31.    Winred.com has previously been sued many times for unwanted and unsolicited text messages.  In these lawsuits, Windred.com has submitted sworn declarations attesting that it does not send the text messages, but that the campaigns and committees usings its platform does send the text messages.

32.    Winred.com's Terms and Conditions state that the text messages are sent by political organizations seeking money, like Defendant, not Winred.com. *See* WinRed Help Center, FAQ, https://support.winred.com/en/articles/9824817-faq (last visited July 1, 2025)

33.    Defendant created and controls the webpages that it pays for on the windred.com platform, and which were promoted and advertised in the text messages sent to Plaintiff

34.    All of the text messages were sent for the purpose of seeking donations and contributions, and for promoting Defendant's business, products and services, including but not limited to an "official golden Trump award," being placed a "list of patriots who accepted their award," being selected to "the official Trump lifetime achievement award," and "Gold Trump Golf Balls with Trump's Signature"

35.    The webpages in the links state "Your contribution will benefit Trump National Committee JFC."

Your contribution will benefit Trump National Committee JFC.

36.     The webpages ask individuals to "cover the processing fee so 100% of [their] donation goes to Trump National Committee JFC."

☐  I would like to cover the processing fee so 100% of my donation goes to Trump National Committee JFC

37.     The webpages in the texts ask individuals to "visit the official Trump Store by clicking here to get the latest MAGA gear."

Don't forget to visit the Official Trump Store by clicking here to get the latest MAGA gear!

38.     Some of the text messages directly link to the Official Trump Store to purchase MAGA gear.

39.     Defendant is a "telephone solicitor" as defined by Fla. Stat. § 501.059(i).

40.     Defendant is a "merchant" as defined by Fla. Stat. § 501.059(f).

41.     The Official Trump Store advertised and promoted through the text messages sells a variety of Trump branded products including baseball caps that are sold for $40.00 to U.S. consumers.

42.     Defendant hosts an official dedicated storefront on Winred.com with products and merchandise to sell to consumers, including hats, shirts, mugs, flags, and more.     *See*     https://secure.winred.com/trump-national-committee-jfc/storefront/?collection=# (last visited June 30, 2025).

43.      For example:

 **TRUMP VANCE**   All   Hats   Summer Sale   Apparel ⌄   Accessories ⌄   Fight Fight Fight   Official Trump-Vance 2024   NEVER SURRENDER   Gulf of America    My Cart (0)





MAGA 45-47 Red Hat
$40.00



Dark MAGA Hat
$40.00



Gold Dark MAGA Hat
$40.00



Gulf of America Mesh Hat
$18.00



Trump Victory Hat
$40.00



Daddy Red T-Shirt
$27.00



DOGE Black Hat
$40.00



Trump-Vance Make America Great Again White Hat
$18.00



Ultra Dark MAGA Hat
$40.00



MAGA 2024 White Hat
$40.00



Presidential Portrait Black T-Shirt
$26.00



Presidential Portrait White T-Shirt
$26.00

12

44.    The webpages state the text are "Paid for by Trump National Committee JFC, Inc."

> Paid for by Trump National Committee JFC, Inc., P.O. Box 509, Arlington, VA 22216.
> Not Authorized by any Candidate or Candidate's Committee.

The Text Message Were Sent Using an Automated System.

45.    Through the unsolicited telemarketing, Defendant contacted Plaintiff many times on Plaintiff's cellular telephone regarding an unsolicited service via an "automated system for the selection and dialing of numbers," as defined by §501.059(8)(a).

46.    Defendant's webpage states: "By providing your phone number, *you are consenting to receive calls and recurring SMS/MMS messages, including autodialed and automated calls and texts . . .*"

> By providing your phone number, you are consenting to receive calls and recurring SMS/MMS messages, including autodialed and automated calls and texts, to that number from each of the participating committees in Trump National Committee JFC, Inc. ("TNC"), a joint fundraising committee of Never Surrender ("the LPAC"), Working for Ohio, and the Republican National Committee ("RNC"). Msg & data rates may apply. Terms & conditions/privacy policy apply. txtterms.co/88022-2

47.    Additionally, Defendant's Mobile Messaging Terms & Conditions state that Defendant is a "joint fundraising venture" and that by "opting -in, you are consenting to receive calls and texts, including autodialed calls and texts, from Trump National Committee JFC and its participants . . . ."

48.    However, to the best of Plaintiff's knowledge, Plaintiff never consented to Defendant's terms whatsoever. Regardless, Plaintiff sent at least 17 STOP messages to Defendant but Defendant ignored those requests.

49.    Defendant's disclosure on its website, that Plaintiff did not consent or opt-in to, demonstrates that Defendant utilizes an automated system to send telemarketing texts.

50.    Additionally, upon information and belief, the selection and dialing of numbers for the texts at issue are done using an automated system because the texts were sent from telephone numbers used to message consumers en masse; because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making calls/texts without manually dialing the recipients numbers; and because the hardware and software used by Defendant to send such calls/texts have the capacity to both select numbers to be dialed and to dial such numbers in an automated fashion based on predetermined, programmed, or random criteria or settings.

51.    The impersonal nature of the text messages, the opt-out instruction, the repeated texts after sending "Stop," and the vanity URL in the text messages, are also indicative of messages sent using an automated system.

52.    Because Defendant continued to text Plaintiff despite Plaintiff texting "stop," it further demonstrates that an automated system was used to select and dial Plaintiff's number and autogenerate messages, that Defendant failed to have in place

or implement an adequate DNC system and procedures, Defendant's failure to ensure that adequate procedures and safeguards were in place to honor opt-out requests, and/or that Defendant willfully continued to call Plaintiff despite her express revocation of any conceivable consent.

53.    Indeed, if a human had seen Plaintiff's STOP messages and/or her number on Defendant's do-not-call list, Defendant would not have continued to text Plaintiff, demonstrating the use of an automated system. If a human did see Plaintiff's STOP messages and/or his number on Defendant's do-not-call list, yet still manually continued text Plaintiff's number regardless, it demonstrates willful misconduct and a knowing violation of the telemarketing laws designed to protect to all United States consumers.

54.    Defendant's automated system selects and dials numbers from a lead list of numbers to be dialed without regard to whether those numbers have been placed, or should have been placed, on Defendant's internal DNC list or on the national DNC list. If it was not automated, human intervention would have prevented the texts from being placed to a number that continued to text STOP and that was on the national DNC list.

55.    Plaintiff texted "Stop," and he did not provide any express written consent or any other party acting on Defendant's behalf to authorize the subject telemarketing text messages. Indeed, prior to making (or knowingly allowing a third party to make on its behalf) the subject telemarketing text messages Defendant lacked

a signed written agreement with Plaintiff that complies with the requirements of the TCPA and Fla. Stat. § 501.059(1)(g).

56.    Defendant failure to honor opt-out instructions by Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

> <u>Defendant is Liable for the Text Messages Because They Were All Sent by Defendant, or on Its Behalf.</u>

57.    To the extent Defendant outsourced its telemarketing spam text messaging campaigns, it is nonetheless liable for texts that violate the TCPA and/or FTSA.

58.    Defendant is liable for third-party actions if it took steps to cause the telemarketing texts to be made, or if the telemarketing texts were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability, including the use of Defendant's name, images, and website. Indeed, the purpose of the text messages was to provide an economic benefit (ie: money) to Defendant.

59.    Defendant had the ability and/or right to control the method and scope of the telemarketing text message campaigns sent to Plaintiff and the Class members.

60.     Defendant had the ability and/or right to control the timing and approve, write, and review the content of the telemarketing text message campaigns sent to Plaintiff and the Class members.

61.     Defendant authorized the use of its trade name in the telemarketing text messages sent to Plaintiff and the Class members.

62.     Defendant authorized and paid for the text messages to be sent, and the webpages advertised in them.

63.     Defendant knowingly accepted the marketing benefits, or intended to accept the benefits, of the telemarketing text messages sent to Plaintiff and the Class members, including the consumer leads generated through transmissions of the messages.

64.     Given Defendant's control over the telemarketing text messaging campaigns at issue and/or its ratification of the campaigns, Defendant is vicariously liable for the violations alleged herein.

65.     Defendant failed to keep, maintain, implement, and/or enforce policies and procedures to ensure compliance with the FTSA and TCPA, and/or provide adequate oversight to ensure compliance with any policies it maintained.

66.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

67.     Compliance with the FTSA will not result in Defendant having to alter the prices of goods or services it provides in the marketplace.

68.    Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

69.    Because Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

Plaintiff Suffered Injury and Harm.

70.    Plaintiff was the subscriber or customary user of his personal and residential cellular telephone number that Defendant texted and is financially responsible for phone service, including the cellular costs and data usage incurred as a result of the calls made to Plaintiff by Defendant

71.    The telemarketing text messages at issue caused Plaintiff and putative Class Members harm. In addition to using their cellular data, storage, and depleted battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other personal and professional activities, and violations of their substantive statutory rights under the TCPA and FTSA to remain free of unsolicited calls. The texts are a disruptive nuisance. *See Drazen v. GoDaddy.com, LLC,* No. 21-10199 (11th Cir. July 24, 2023 (en banc) ("A plaintiff who receives an unwanted, illegal text message suffers a concrete

injury"); *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury… is enough for standing purposes");*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

72.    Plaintiff and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited telemarketing text messages.

73.    Apart from forcing Plaintiff to spend time investigating the source of the text messages and invest time researching and hiring counsel, Plaintiff received some of the unsolicited telemarketing text messages while he was sharing personal and intimate time with family. This caused Plaintiff to stop to check his phone and waste time reviewing the messages to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal and daily life.

74.    Because Defendant sends and receives text messages, from different unknown numbers "blocking" Defendant's number is not an option to stop the harm.

75.    Because Defendant sends and receives text messages from different unknown numbers, it further demonstrates Defendant's failure to have in place or implement an adequate DNC system and procedures, and Defendant's failure to

ensure that adequate procedures and safeguards were in place to honor opt-out requests.

76.    Because Plaintiff and Class Members continued to received telemarketing texts from Defendant after they texted "stop,", and because Plaintiff's and Class Members' telephone numbers are on the DNC registry, it demonstrates the need for judicial intervention and injunctive relief to enjoin any continued and future harm.

## CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this class action under Rule 23(a), (b)(2), and(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and of a similarly situated "Class" or "Class Members" defined as:

> **DNC Registry Class:** **All persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls, from four years prior to the filing of the Complaint through the date of class certification.**

> **Internal DNC Class:** **All persons within the United States who, within the four years prior to the filing of this Complaint, received any telemarketing text message from or on behalf of Defendant, to said person's cellular telephone number *after* making a request to Defendant to not receive future telemarketing text messages.**

> **FTSA Internal DNC Class:** **All persons within the State of Florida who received any text message from or on behalf of Defendant at least 15 days *after* communicating to Defendant**

**that they did not wish to receive text messages by replying to the messages with "stop" or similar opt-out instruction between July 1, 2021, to the date of Class Notice.**

78.    Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

79.    This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend, expand, or narrow the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

80.    **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized spam text messaging campaign electronically sent to particular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

81.    Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's texting logs and marketing records.

82.    Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

83.    **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

> a.    Whether Defendant or the entity with which it contracts makes solicitation text messages calls to telephone numbers registered on the National Do-Not-Call Registry;

> b.    Whether Defendant initiated telemarketing text messages sent to Plaintiff and Class members;

> c.    Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent any unsolicited text message(s) (other than a

message made for emergency purposes or made with the prior express consent of the called party) to a Class member's telephone number assigned to a cellular phone service;

d. Whether the combination of hardware and software used to place the texts constitutes an automated system;

e. Whether the telephone number used to place the texts is capable of receiving incoming calls;

f. How Defendant obtained the numbers of Plaintiff and Class members;

g. Whether Defendant can meet its burden of showing that it had prior express written consent to send such texts;

h. Whether Defendant willfully or knowingly violated Fla. Stat. § 501.059 and its regulations;

i. Whether Defendant willfully or knowingly violated 47 C.F.R § 64.1200(d);

j. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

k. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

l. Whether Plaintiff and the Class are entitled to any other relief.

84.    One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

85.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the FTSA and TCPA.

86.    Plaintiff and members of the Class each received at least one telephonic sales call, advertising Defendant's services without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

87.    **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in TCPA litigation and class action litigation.

88.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and

procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

89.    **Class-Wide Injunctive Relief:** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the Florida Telephone Solicitation Act, and to order Defendant to provide notice to them

of their rights under the Florida Telephone Solicitation Act to statutory damages and to be free from unwanted text messages.

## CAUSES OF ACTION
### COUNT I
### VIOLATION OF THE TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the DNC Registry Class)

90.    Plaintiff and the proposed Class incorporates the allegations contained in Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.    The TCPA establishes a national "do not call" database of numbers not to be called.  In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014 ("DNC Order").

92.    These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

93.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

94.    Plaintiff's telephone number ending in 4074 has been on the National Do-Not-Call Registry since January 5, 2005.

95.    Plaintiff received the texts after he expressly told the Defendant to stop, and more than 30 days after he registered his number on the DNC Registry

96.    Defendant made, or had made on its behalf, calls constituting telephone solicitations to Plaintiff's and putative DNC Registry Class Members' telephone numbers.

97.    Plaintiff's and putative DNC Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

98.    Plaintiff and putative DNC Registry Class Members each received two or more such calls in a 12-month period.

99.    Plaintiff and putative DNC Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

100.    Plaintiff and putative DNC Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND C.F.R. § 64.1200(c)**
**(On behalf of Plaintiff and the Internal DNC Class)**

101.    Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 89 of this Complaint as if set forth verbatim herein.

102.   47 C.F.R. § 64.1200(d), in relevant part, provides: "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards including:

*(1) Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity. . .

(6) *Maintenance of do-not-call lists*. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

103.    Pursuant to 47 C.F.R § 64.1200, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

104.    Plaintiff and others Internal DNC Class members made requests to Defendant not to receive telemarketing text messages from Defendant.

105.    Defendant failed to honor Plaintiff's and the Internal DNC Class members opt-out requests.

106.    Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

107.    Pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each telemarketing text message sent by Defendant. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT III**
**VIOLATIONS OF FLORIDA STATUTE § 501.059(5)**
**(On behalf of Plaintiff and the FTSA Internal DNC Class)**

108.   Plaintiff incorporates by reference all of the allegations contained in Paragraphs 1 through 89 of this Complaint as if set forth verbatim herein.

109.   The foregoing acts and omissions of Defendant constitute numerous and multiple negligent or willful violations of Florida Telephone Solicitation Act, Florida Statute §501.059.

110.   It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. §501.059(8)(a).

111.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

112.   "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

113.    Defendant failed to secure prior express written consent from Plaintiff and the Class members.

114.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

115.   Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

116.   Additionally, it is a violation of the FTSA to initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the person that he or she does not wish to receive an outbound call, text message, or voicemail transmission. Fla. Stat. § 501.059(5)(a), (b).

117.   Here, in addition to promoting defendant's goods and services, Defendant sought money for donors and potential donors who previously communicated that they did not wish receive text messages or to be contacted.

118.   Plaintiff and the FTSA Class Members made requests to Defendant not to receive spam telemarketing text messages from Defendant.

119.   Defendant failed to honor Plaintiff's and the FTSA Class Members opt-out requests.

120.   In violation of the FTSA, Defendant made and/or knowingly allowed outbound telemarketing text messages to Plaintiff and the FTSA Class members, at least 15 days after they had previously communicated to Defendant that they did not wish to receive any text messages from Defendant.

121.    Plaintiff received at least 2 (at least 12 based on Plaintiff's call records) telemarketing text messages from Defendant more than 15 days after he texted "STOP," revoking any conceivable consent

122.    As a result of Defendant's negligent violations of the Florida Telephone Solicitation Act, Florida Statute §501.059, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to Florida Statute §501.059 (10)(a).

123.    If Defendant's conduct is found to be knowing and/or willful violations of the Florida Telephone Solicitation Act Florida Statute §501.059, Plaintiff and The Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to §501.059(10)(a)(b).

124.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

125.    Plaintiff is also entitled to reasonable attorney fees and costs incurred in prosecuting this action..

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of the Class(es), prays for the following relief:

a.  An order certifying this case as a class action, certifying Plaintiff as

representative of the Class, and designating Plaintiff's attorneys Class counsel;

b.  An order declaring that Defendant's actions, as set out above, violate the FTSA, and TCPA and its implementing regulations;

c.  Statutory damages of $500 per text message, for each FTSA and TCPA violation;

d.  Willful damages at $1,500 per text message, for each FTSA and TCPA violation;

e.  An injunction prohibiting Defendant from texting numbers without the prior express written consent of the called party;

f.  Reasonable attorney's fees and costs; and

g.  Such further and other relief as this Court deems reasonable and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury.

Dated: July 10, 2025                     Respectfully submitted,

*/s/ Joshua Eggnatz*
Joshua H. Eggnatz, Esq.
Florida Bar No.: 0067926
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
jeggnatz@justiceearned.com

*Lead Counsel for Plaintiff*
*and the Class*

Seth M. Lehrman, Esq.
Florida Bar No.: 132896
**LEHRMAN LAW**
6501 Park of Commerce Blvd. Suite
253
Boca Raton, FL 33487
Tel: 754-778-9660
E-mail: seth@lehrmanlaw.com

*Counsel for Plaintiff and the Class*