UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:25-cv-01277-CEM-NWH

ADAM DEPASQUA, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

TRUMP NATIONAL COMMITTEE JFC, INC.

    Defendant.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY

Plaintiff submits this Response in Opposition to Defendant's Motion to Stay Discovery Pending Ruling on Defendant's Motion to Dismiss [Dkt No. 26] ("Motion"). Defendant has not satisfied its burden to show that a stay is appropriate. Its Motion should be denied.

### I.    Background

Delayed discovery is not in the interest of justice. Defendant's pending Motion provides no basis to delay this case or restrict Plaintiff from obtaining discoverable information.

As set forth more fully in Plaintiff's Response in Opposition to Defendant's Motion to Dismiss [Dkt. No. 27], Defendant's Motion to Dismiss will not dispose of Plaintiff's Complaint because:

1) Texts from tax-exempt nonprofits are not categorically exempt from DNC Registry violations as a matter of law;

2) Tax-exempt nonprofits are not exempt from the *Internal* DNC Rules;

3) A Text is a "Call" under the TCPA; and

4) The FTSA does not exempt political organizations from text message solicitations.

Plaintiff received at least 20 texts from Defendant (many of which were after the November 2024 election season, so the funds solicited could not have been used to elect any candidate to office). Compl. ¶ 22. Plaintiff texted the word "STOP" in response to each of the texts, but Defendant ignored all of Plaintiff's stop requests and continued to solicit him. *Id*. ¶ 23 – 25. Each text either requested money, advertised products for purchase, or directed Plaintiff to webpages to purchase products from the software and payment processing platform www.windred.com. Compl. *Id*. ¶ 25 – 29.

The texts promoted merchandise sales and payment processing through WinRed.com, which is owned and operated by WinRed Technical Services, LLC ("WRTS"), a for-profit Virginia company. WRTS is neither a nonprofit nor a federally registered PAC. Its platform charges consumers payment processing and merchandising fees to use its product and services.

Accordingly, the texts directly promoted WRTS's commercial services, making the nonprofit exemption inapplicable. Courts have emphasized that "nonprofit" status under the TCPA turns on questions of fact. Additionally, the United States Supreme Court, every Circuit Court, the FCC, and Congress disagree with Defendant's position that a text is not a "call" under the TCPA.

The Court considered the parties' discovery positions set forth in their Case Management Report, including Defendant's position that discovery should be stayed pending resolution of its Motion to Dismiss. [Dkt. No. 24]. The Court entered its Case Management and Scheduling Order and did not phase or otherwise limit discovery. [Dkt. No. 25].

An unnecessary delay in discovery will prejudice Plaintiff's ability to prove his and class members' claims within the case management order entered by the Court.

## II.     Legal Standard

District courts are given "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1269 (11th Cir. 2001). Generally, motions to dismiss should be resolved as soon as practicable to obviate avoidable discovery costs, especially where a dubious claim appears destined for dismissal. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1368 (11th Cir. 1997) ("If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided").

However, the Local Rules for the Middle District of Florida make clear that a stay of discovery pending the determination of a motion to dismiss *normally, will not justify a unilateral motion to stay discovery* and *are rarely granted*. *See* M.D. Fla. Local Rules, Handbook on Civil Discovery Practice I.E(4) (unilateral motions to stay discovery are generally denied). Indeed, "[a] request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the *entire* case." *See McCabe v. Foley,* 233 F.R.D. 683, 685 (M.D. Fla. 2006) (Morris, J.) (emphasis added).

To evaluate whether there is a strong likelihood that "the motion [to dismiss] will be granted and entirely eliminate the need for such discovery," the district court may take a "preliminary peek" at the merits of the motion. *Feldman v. Flood,* 176 F.R.D. 651, 652-53 (M.D. Fla. 1997) (citations omitted). "Courts may 'take a preliminary peek at the merits of the allegedly dispositive motion to see if *on its face there appears to be an immediate and clear possibility that it will be granted*." *Lafleur v. State Univ. Sys. of Fla., et al*, Case No. 01665-CEH, [Dkt No. 44] (M.D. Fla. Dec. 7, 2020) (citing *Feldman*, 176 F.R.D. at 652.

The court must also balance "the harm produced by a delay in discovery" against "the likely costs and burdens of proceeding with discovery." *Feldman,* 176 F.R.D. at 652. "Both concerns are important – while a defendant should not be forced to expend substantial resources answering discovery when the plaintiff's claims clearly lack merit, the delay and prolongation of discovery can also create case management and scheduling problems and unfairly hold up the prosecution of the case." *Ray v.*

4

*Spirit Airlines, Inc.*, 2012 LEXIS 160948, *4 (S.D. Fla. Nov. 9, 2012) (citations omitted). Ultimately, the proponent of the stay bears the burden of demonstrating its necessity, appropriateness, and reasonableness. *Ray*, 2012 LEXIS 160948 at * 4 (citing *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006).

Here, Defendants' Motion should be denied because it will not dispose of the case. Questions of fact prevent resolution of Plaintiff's TCPA claims as a matter of law at the pleading stage. Regarding Plaintiff's FTSA claim (Count III), Defendant's basis for dismissal is wrong as a matter of law because the FTSA does not exempt political organizations. To the contrary, it specifically includes liability for text messages soliciting potential donors. Text messages are considered "calls" for each of Plaintiff's claims. Even assuming the pending Motion to Dismiss is granted based on a technical pleading defect, any defect can and will be cured by an amendment. Under either scenario, this case will proceed on the merits and discovery should not be delayed.

### III.   Arguments

While the Court has discretion to stay an action, "the party seeking the stay has the burden of demonstrating why a stay should issue." *Carapella v. State Farm Fla. Ins. Co.*, 2018 WL 7268163, at *1 (M.D. Fla. Nov. 5, 2018) (Honeywell, J.) (citing *Postel Indus., Inc. v. Abrams Grp. Constr., L.L.C.*, 2013 WL 1881560, at *4 (M.D. Fla. Mar. 29, 2013)). "[M]otions to stay discovery are disfavored as they 'can create case management problems which impede the Court's responsibility to expedite discovery.'" *Carapella*, 2018 WL 7268163, at *1 (citing *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)). For this reason, "stay[ing] ... discovery pending resolution

of a motion is rarely appropriate unless resolution of the motion would dispose of the entire case." *Id*.; *see also Kattell v. Brenntag Mid-South, Inc.*, 2019 WL 1676201, at *2 (M.D. Fla. Apr. 17, 2019) (Honeywell, J.) ("generally, a pending dispositive motion alone is not a basis to delay discovery").

Defendant suggests that *Chudasama* stands for the broad proposition discovery should be stayed pending the resolution of a motion to dismiss. "Th[is] Court, however, disagrees that *Chudasama* stands for such a broad proposition." *Lafleur*, Case No. 01665-CEH, [Dkt No. 44, p. 4]; *See Koock v. Sugar & Felsenthal, LLP,* No. 8:09-cv-609-T-17EAJ, 2009 WL 2579307, at *2 (M.D. Fla. Aug. 19, 2009) (Jenkins, M.J.) ("The holding in *Chudasama* does not establish the general rule that discovery should not proceed while a motion to dismiss is pending."); *In re Winn Dixie Stores, Inc. Brisa Litig.,* No. 3:04-cv-194-J-33MCR, 2007 WL 1877887, at *2 (M.D. Fla. June 28, 2007) (Covington, J.) (noting that Eleventh Circuit case law, including *Chudasama* and its progeny, does not support "the implicit contention that discovery should be stayed whenever a defendant files a motion to dismiss."). Indeed, "motions [to stay discovery] are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman, 176 F.R.D. at 652*; *see also* M.D. Discovery (2015) §l(E)(4) ("Normally, the pendency of a motion to dismiss ... will not justify a unilateral motion to stay discovery pending resolution of the dispositive motion.").

A. **Conducting Discovery Will Not Constitute a Significant Burden, But A Stay Will Cause Plaintiff to be Prejudiced.**

There is no significant burden in conducting discovery and, to the contrary, to stay discovery would only cause Plaintiff to be prejudiced. Defendant has not provided any special reason why following the normal discovery schedule would constitute a significant burden.

A possibility that discovery could be narrowed by a motion to dismiss does not constitute a significant burden. *Kattell v. Brenntag Mid-South, Inc.*, 2019 WL 1676201, at *3 (M.D. Fla. Apr. 17, 2019) (Honeywell, J.) (denying an *unopposed* motion to stay discovery pending a motion to dismiss where "Defendant provides no argument that the discovery … is unusually burdensome or costly, but instead seeks a stay based on the normal costs and burdens that come with discovery").

*Chudasama* is clearly distinguishable to the case here. The court in *Chudasama* characterized the case as "illustrat[ing] the mischief that results when a district court effectively abdicates its responsibility to manage a case involving contentious litigants and permits excessive and dilatory discovery tactics to run amok." *Chudasama*, 123 F.3d at 1356. This is certainly not the case here where Plaintiff alleges routine TCPA and FTSA violations with routine proposed classes and the Court has not abdicated any case management responsibility.

*Ray v. Spirit Airlines, Inc.*, 2012 LEXIS 160948, *4 (S.D. Fla. Nov. 9, 2012) is instructive. *Ray* involved a putative class action brought under the federal civil racketeering laws against Spirit Airlines, in connection with an allegedly fraudulent

7

and deceptive practice of charging "Passenger user fee[s]," in connection with ticket sales. *Id.* at * 2.  In rejecting the same arguments asserted by the Defendant here, the court in *Ray* held that "[w]hile the Court must conduct a 'preliminary peek' at the motion and the Complaint to see whether the Plaintiffs' claims are likely baseless or dubious the Court is not required to move Spirit's dismissal motion *to the front of the line*, ahead of other cases with pending motions, and fully adjudicate it on the spot. Such a requirement would be unfair to other parties, as well as to the Court." *Id.* at *6 (emphasis added) (citation omitted).  The Defendant, like the defendant in *Ray*, should not be entitled to "jump" the line.

> *Ray* rejected the applicability of *Chudasama* and explained that in *Chudasama*:
>
> > [t]he court of appeals confronted a very specific situation involving a threefold problem – unjustifiable delay by the district court in ruling on the motion to dismiss, an erroneous decision to compel discovery from the defendant prior to adjudicating the motion to dismiss, and an especially dubious fraud claim that was likely to be dismissed.
>
> *Id.* at *11.

"[B]y contrast," the Court observed, the defendant's "motion was filed barely more than a month ago and has just now become ripe." *Id.*; *see also Bocciolone v. Solowsky,* 2008 LEXIS 59170, *2 ("The procedural posture here is a far cry from the bizarre situation in *Chudasama,* and this Court has not unduly delayed any rulings in this case").

8

Similarly, here, Defendant's Motion to Dismiss was filed just 3 weeks ago and is not overdue for a ruling. *See id.* at * 11 (The defendant's "motion was filed barely more than a month ago and has just now become ripe"). Like in *Ray*, this Court should deny Defendant's Motion.

The Defendant, like the defendant in *Ray*, also asserts that engaging in the discovery process would be unfair and a waste of time and resources. This argument, too, was rejected by the *Ray* court. *Id.* at *8 (the defendant "has not identified in any specific and tangible way the unreasonable discovery burdens it will face absent a stay"). To assuage the defendant's concern over the cost of engaging in the exchange of discovery, the court in *Ray* reminded the defendant that the court would consider the defendant's objections to the plaintiff's discovery. *Id.* at *12.

The Defendant here has the same right to raise proportionality concerns when it responds to Plaintiff's discovery. Notably, Plaintiff has already advised Defendant and stated in the Parties' Case Management Report and in the conferral certification of Defendant's Motion, that Plaintiff is willing to accept a de-identified class list and summary call data pre-certification, and that Defendant is not required to produce any class discovery prior to a ruling on Defendant's Motion to Dismiss, to address any perceived proportionality concerns at this stage of the litigation. Defendant rejected both of Plaintiff's compromised proposals and seeks a complete stay of discovery, including its Rule 26 Initial Disclosure obligations.

A stay of discovery would prejudice Plaintiff given the impending case management deadlines. Plaintiff seeks to advance the litigation diligently and

9

expeditiously. A party cannot be held to deadlines, while at the same time be hamstrung from conducting discovery to meet those deadlines – that is exactly what Defendant is asking the Court to do.

### i.     A Peek at the Allegations

A "preliminary peek" at the Complaint, Defendant's Motion to Dismiss, and Plaintiff's Response in Opposition, demonstrates that Plaintiff has sufficiently alleged both his TCPA and FTSA's claims.

The allegations demonstrate that "the Court cannot conclude that there is a 'clear possibility' that the [pending Motion to Dismiss] will be granted in its entirety. . . . . [I]t appears that some of Defendant's arguments may be premised on drawing inferences from the allegations that are not favorable to Plaintiff, which is the incorrect standard of law on a motion to dismiss." *Lafleur*, Case No. 01665-CEH, [Dkt No. 44, p. 5] (citing S*ee Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Additionally, for purposes of evaluating the instant motion, a peek at the WRTS' platform demonstrates the commercial nature of the texts and that its for-profit product and services were promoted in the texts to Plaintiff.

Regarding the issue of whether a text is a call – that argument is not relevant to the FTSA claim because the FTSA specifically includes "text messages." For that reason alone, Defendant's Motion to Dismiss will not dispose of the litigation. As this issue relates to the TCPA claims, the primary flaw with Defendant's argument is that it asks this Court to apply the incorrect standard of review to the FCC's exercise of discretion.

10

"[W]hen an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard. *Under that standard, a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained*." *Seven Cty. Infrastructure Coal. v. Eagle Cty.*, 145 S. Ct. 1497 (2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-392) (citing *Motor Vehicle Mfrs. Ass'n of United States, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 43 (1983); *FCC* v. *Prometheus Radio Project*, 592 U. S. 414, 423 (2021).

Under the correct standard of review, it cannot be said that the FCC, under its grant of authority from Congress, acted unreasonably or inconsistent with the statute when it extended the TCPA's protections, including the DNC provision, to text messages. In fact, *Congress adopted the FCC's interpretation* when it recently amended the TCPA. *See Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) ("In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages.") (citing *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274.

This Court should, respectfully, reject Defendant's request to ignore decades of precedent, FCC Orders, and congressional action in favor of a conflicting and narrow interpretation of the statute that would allow telemarketers to continue to harass consumers with text message spam, including after they've requested them to STOP.

11

The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), do not support Defendant's position. The Supreme Court's holding in *Campbell-Ewald* is not mere dicta. "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id.* at 199.

As one court recently held, the FCC was well within its authority to clarify and codify that the DNC provisions apply to text messages. *See Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025) ("Defendant's argument that the FCC lacks authority to do so is undermined by the statutory structure of the TCPA, which explicitly delegates such authority, as well as the vast applicable case law which abides by the FCC's regulations and guidance.).

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which Defendant relies on, the court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — ***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Had the court in that case applied the correct standard of review to the FCC's action, it would have followed the FCC's interpretation because nothing about

12

it is arbitrary and capricious. *See generally Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025). Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may even apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.*

Regardless, courts interpret the word "according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to get into communication with a person by a telephone.'" *Id.* (internal citations omitted). "Other courts have adopted this definition in the TCPA context." *Id.* (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union Dist. 119 WV/KY/DH*, 708 F.3d 737, 742 (6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 U.S. Dist. LEXIS 112780, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield, v. Simon & Schuster, Inc.*, 569 F.3d 946, at 954 (9th Cir. 2009) ("It is undisputed that text messaging is a form of communication used primarily between telephones."). Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with

13

telecommunications technology as it evolves, *e.g.*, with the advent of text messages and email-to-text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018).

Indeed, in a 2015 ruling, the FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as *new technologies emerge*." *Id*. (quoting *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 113-15 (2015) (emphasis added)). In that ruling, the FCC found that even when the computer "dials" a cell phone number such that the message is not initiated from a telephone, it is still considered a "call" under the TCPA. *See In the Matter of Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8019 (2015). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

"[E]ven were the Court to grant the motion to dismiss in its entirety, dismissal likely would not be with prejudice. Therefore, the resolution of the motion to dismiss likely will not be truly case dispositive. This fact militates against granting the requested stay." *Lafleur*, Case No. 01665-CEH, [Dkt No. 44, p. 5] (citing *Williams v. Educ. Credit Mgmt. Corp.,* Case No. 14-cv-1254, 2015 WL 493767, at *2 (M.D. Fla. Jan. 14, 2015) (denying a motion to stay discovery pending resolution of a motion to dismiss where "it appears likely that this case will proceed regardless of the specifics of this Court's order on [the] motion to dismiss").

14

"Defendants have offered only conclusory statements regarding the potential costs of discovery, while failing to identify any specific reason why allowing discovery to proceed in this particular case would be unduly burdensome. *Lafleur*, Case No. 01665-CEH, [Dkt No. 44, p. 5].

### IV.   Conclusion

Based on the foregoing, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Motion to Stay Discovery, and for all other relief deemed just, appropriate, or proper. A delay in discovery will unfairly prevent Plaintiff from prosecuting his case in a timely manner.

Dated: September 10, 2025            Respectfully Submitted,

/s/ Joshua Eggnatz
Joshua H. Eggnatz, Esq.
Florida Bar No.: 0067926
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
Email: jeggnatz@justiceearned.com

*Lead Counsel for Plaintiff
and the Class*

Seth M. Lehrman, Esq.
Florida Bar No.: 132896
LEHRMAN LAW
6501 Park of Commerce Blvd.
Suite 253
Boca Raton, FL 33487
Tel: (754) 778-9660
Email: seth@lehrmanlaw.com

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 10th day of September 2025, I electronically filed the foregoing document with the Clerk of Court for the United States District Court for the Middle District of Florida and served a true and correct copy thereof on all counsel of record using the CM/ECF System.

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz

## SERVICE LIST

Eric Lundt (FL Bar No. 861715)
Sarah Morgado (FL Bar No. 1026053)
Jones Day
600 Brickell Avenue, Suite 3300
Miami, FL 33131
Tel: (305) 714-9700
Fax: (305) 714-9799
Email: elundt@jonesday.com
Email: smorgado@jonesday.com

E. Stewart Crosland (D.C. Bar No. 1005353) (Admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 879-3939
Fax: (202) 626-1700
Email: scrosland@jonesday.com

*Counsel for Defendant Trump National Committee JFC, Inc*