UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ADAM DEPASQUA,**

**Plaintiff,**

v.                                                          **Case No. 6:25-cv-1277-CEM-NWH**

**TRUMP NATIONAL
COMMITTEE JFC, INC.,**

**Defendant.**

_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion to Dismiss ("Motion," Doc. 20) to which Plaintiff filed a Response (Doc. 27). For the reasons set forth below, the Motion will be granted.

### I.   BACKGROUND

Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA") and it's Florida analog by sending him at least twenty text messages. Defendant is a nonprofit political group. Defendant argues that Plaintiff's claims must be dismissed because Defendant is exempt from the TCPA's regulations; the

Page **1** of **14**

relevant provision of the TCPA prohibits only telephone calls, not text messages; and the state law claim should be dismissed for lack of subject matter jurisdiction.[1]

## II.   LEGAL STANDARDS

Plaintiff's first two arguments are analyzed under Federal Rule of Civil Procedure 12(b)(6), while the last argument is analyzed under Rule 12(b)(1).

### A.   Rule 12(b)(6)

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient

---

[1] Defendant also makes substantive arguments regarding the state law claim, but because the Court agrees with Defendant's argument regarding subject matter jurisdiction, it need not address those arguments.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### B.   Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." "Attacks on subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When jurisdiction is properly challenged, a

plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 U.S. Dist. LEXIS 7066, at *4 (M.D. Fla. Jan. 31, 2008).

### III.   ANALYSIS

#### A.   Count I

In Count I, Plaintiff alleges that Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). Section 227(c)(5) creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." Section 64.1200(c) sets forth one of the prescribed regulations and states in relevant part: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." The TCPA defines "telephone solicitation," in relevant part, as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, *but such term does not include a call or message . . . by a tax exempt nonprofit organization*." 47 U.S.C. § 227(a)(4) (emphasis added).

The parties do not dispute that Defendant is a tax exempt nonprofit organization. Instead, Plaintiff argues that some district courts have carved out an

exception to the exception, holding that a nonprofit organization is not exempt from the definition of telephone solicitation if the messages from the nonprofit are for commercial purposes. No such carve out exists in the plain language of the statute. It does not exempt solicitations for a non-commercial purpose from the definition of telephone solicitation, which Congress could have done. Instead, the plain, clear language of the statute exempts all messages and calls from tax exempt nonprofit organizations. *See Camunas v. Nat'l Repub. Senatorial Comm.*, 570 F. Supp. 3d 288, 300 (E.D. Pa. 2021) (collecting cases that have come to the same conclusion).

Moreover, the cases cited by Plaintiff appear to involve allegations that the nonprofit was being used as a conduit by a for-profit business to market its products. *See Pinn v. Consumer Credit Counseling Found., Inc.*, No. 22-cv-04048-DMR, 2023 WL 21278, at *4 (N.D. Cal. Jan. 3, 2023); *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-00510-AJB-MSB, 2021 WL 948805, at *6 (S.D. Cal. Mar. 12, 2021). There are no such allegations here. Plaintiff alleges that Defendant used a platform to process the donations and that the platform charged a processing fee, but the alleged messages are clearly promoting Defendant's own organization, not the processing platform. Thus, even under the non-binding caselaw that reads in a non-existent exception, Count I fails.

## B.    Count II

Defendant makes the same argument as to Count II as it did with Count I—that it is exempt from these regulations because it is a nonprofit political organization. But Count II alleges a violation of § 64.1200(d), not § 64.1200(c).[2] Subsection (d) states, in relevant part: "No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." It then sets forth minimum standards that must be included in such procedures. *Id.* § 64.1200(d). Notably, subsection (d) does not involve "telephone solicitations." And, as discussed above, the exception for nonprofit organizations discussed in Count I comes from the definition of "telephone solicitations."

Moreover, it appears that the Federal Communications Commission ("FCC") expressly decided that nonprofits must comply with § 64.1200(d). That subsection previously had an exemption for tax exempt nonprofit organizations, but it "was removed from the implementing regulations effective July 20, 2023." *Perrong v. Brief Call, Inc.*, No. 22 Civ. 4128 (PGG) (SN), 2024 U.S. Dist. LEXIS 61653, at *14 n.2 (S.D.N.Y. Mar. 29, 2024). *Compare* 47 C.F.R. § 64.1200(d)(7) (effective May

---

[2] There appears to be a typo in the title of Count II in the Complaint, where it references subsection (c), but the substance of the Count cites subsection (d) and it is clearly referencing that regulation. (Doc. 1 at 27–29).

11, 2023 to July 19, 2023) ("Tax-exempt nonprofit organizations are not required to comply with 64.1200(d).") *with* 47 C.F.R. § 64.1200(d) (effective July 20, 2023 to Jan. 7, 2024) (removing subsection (7) and the nonprofit exemption).[3] Thus, all of the caselaw that Defendant cites, which addresses regulations involving telephone solicitations or subsections that have an exception for nonprofits, is inapplicable to Count II.

Next Defendant argues that Count II should be dismissed because there were only text messages involved here. As noted above, § 277(c)(5) sets forth the relevant private right of action under the TCPA for "[a] person who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." (emphasis added). Thus, for Plaintiff to have an actionable claim here, text messages must fall within the definition of "telephone call."

The TCPA does not define "telephone call" or "call." But the FCC has interpreted it as including text messages. *See, e.g., In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (interpreting "call" under § 277(b)(1) as "encompass[ing] both voice calls

---

[3] The versions of the Regulations in effect during the timeframe Plaintiff allegedly received text messages—September 24, 2024 through June 16, 2025—also do not include this exemption. However, it is worth noting that Plaintiff's proposed class reaches back to July 2021, (Doc. 1 at 20 (proposing that the "Internal DNC Class" includes individuals who received offending messages "within the four years prior to the filing of this Complaint")), thus this analysis may be different as to any purported class claims prior to July 20, 2023.

and text calls to wireless numbers including, for example, short message service (SMS) calls"). Thus, under *Chevron*[4] deference, most courts followed the FCC's interpretation. *Pinkard v. Wal-Mart Stores, Inc.*, No. 3:12-cv-02902-CLS, 2012 U.S. Dist. LEXIS 160938, at *8 (N.D. Ala. Nov. 9, 2012). However, the Supreme Court has now overruled *Chevron*, and directed courts to "exercise their independent judgment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).  And while "[c]areful attention to the judgment of the Executive Branch may help inform that inquiry . . . courts need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 412–13.[5]

Since *Loper Bright*, district courts have been split as to whether "telephone call" includes text messages. *See, e.g., Wilson v. Better Mortgage Corp.*, No. 25 CIV. 5503 (PAE), 2025 WL 3493815, at *5–9 (S.D.N.Y. Dec. 5, 2025) (continuing to apply the FCC's interpretation that a "call" encompasses a text message); *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272 (N.D. Fla. 2025) (determining that

---

[4] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("When a court reviews an agency's construction of the statute which it administers" and "the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

[5] Plaintiff argues that a more deferential standard applies here because Congress delegated authority to the FCC. But "this delegation did not authorize the FCC to determine that 'telephone call' includes text messages." *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811-TWT, 2026 U.S. Dist. LEXIS 32415, at *12–13 (N.D. Ga. Feb. 17, 2026).

a "text message is not a 'telephone call'"). However, the cases that continue to uphold the FCC's definition often turn to outside sources—such as dictionaries and legislative history—as well as pre-*Loper Bright* decisions. *See, e.g.*, *Wilson*, 2025 WL 3493815, at \*9. Moreover, these cases indicate that they are still deferring to the FCC's interpretation, relying on the statement in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, that courts must "afford[] appropriate respect to the agency's interpretation." 606 U.S. 146, 152 (2025). *See, e.g.*, *Mey v. Liberty Home Guard, LLC*, No. 5:23-cv-281, 2026 U.S. Dist. LEXIS 739, at \*18–19 (N.D.W. Va. Jan. 5, 2026) (continuing to use the FCC interpretation and noting that, "at a minimum," the court must "afford 'appropriate respect to the agency's interpretation'"); *Glasel v. Office Depot, LLC*, No. 9:24-cv-80910-WPD, 2025 U.S. Dist. LEXIS 231053, at \*6 (S.D. Fla. Nov. 25, 2025) (determining that it would "afford 'appropriate respect' to the FCC's interpretation" and continue to apply it but noting that if it were "interpreting the TCPA on a blank slate under ordinary principles of statutory interpretation, this Court would tend to agree with the district courts who have determined that a call does not include a text message").[6]

---

[6] Plaintiff also cites *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165-TPB-SPF, 2025 WL 2379617, at \*2 (M.D. Fla. Aug. 15, 2025), but that case did not address whether text messages were actionable under § 277(c)(5). Instead, "Defendant's sole argument for dismissal" in *Harriel* was that a cell phone did not constitute a residential phone. *Id.*

But this statement is taken out of context. In *McLaughlin*, the Supreme Court stated: "The District Court is not bound by the FCC's interpretation of the TCPA. The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, 606 U.S. 146, 168. While this statement about "respect" muddies the water a bit, given the context, it is most likely that this was an instruction to consider the agency's determination. But regardless, the Supreme Court was explicit: district courts must interpret the statute under ordinary principles of statutory interpretation.

Under such principles, "Courts must interpret every statute 'in accord with the ordinary public meaning of its terms at the time of its enactment.'" *Davis*, 797 F. Supp. 3d at 1272–73. (quoting *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654 (2020)). "The canons of construction often play a prominent role in that endeavor, serving as useful tools to discern that ordinary meaning." *Id.* (quoting *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022)). "But if the text is clear, the analysis begins and ends there." *Id.* (citing *Young v. Grand Canyon Univ., Inc.*, 980 F.3d 814, 818 (11th Cir. 2020)).

In applying these principles, the Court is persuaded by the district courts within the Eleventh Circuit that have determined "[t]he statutory text here is clear, and a text message is not a 'telephone call.'" *Id.* (emphasis removed); *Sayed v.*

*Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-cv-2811-TWT, 2026 U.S. Dist. LEXIS 32415, at *14 (N.D. Ga. Feb. 17, 2026). "[N]o ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis*, 797 F. Supp. 3d at 1273.

Plaintiff argues that the other statutory text of § 277 indicates that text messages should be covered, specifically noting that Congress added text messages to other provisions in 2019. However, "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [Plaintiff's] position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Id.* at 1274. "[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Sayed*, 2025 WL 2997759, at *2 (quoting *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025)).

Accordingly, because § 277(c)(5) only provides a private right of action for someone who has received telephone calls, and Plaintiff only alleges that he has received text messages, Count II is due to be dismissed.[7]

---

[7] Count I is also due to be dismissed on this alternative basis.

## C.    Count III

Count III is brought pursuant to Florida law. Defendant argues that because the federal law claims must be dismissed, the Court should dismiss Count III for lack of subject matter jurisdiction. Obviously, there is not federal question jurisdiction over Count III. Additionally, Defendant explains that the amount in controversy is too low for diversity or Class Action Fairness Act jurisdiction. (Doc. 20 at 19–20). As such, Defendant argues that the Court should decline to exercise supplemental jurisdiction over Count III.

A district court may decline to exercise supplemental jurisdiction over a claim if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Case law is legion for the proposition that district courts must be circumspect about wielding their discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367 after all original jurisdiction claims have been dismissed. *See, e.g.*, *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); *Murphy v. City of Aventura*, 383 F. App'x 915, 918–19

(11th Cir. 2010) ("There was no reason for the district court to exercise supplemental jurisdiction over the state law claims after the court dismissed the federal claims over which it had original jurisdiction.").

When determining whether to dismiss remaining state law claims, district courts must consider "the circumstances of the particular case, the nature of the state law claims, [and] the character of the governing state law," in addition to the following four factors: judicial economy, convenience, fairness, and comity. *City of Chicago, v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997); *see Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015).

As an initial matter, Plaintiff failed to respond to Defendant's arguments that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims, which indicates that the request is unopposed. *Foster v. The Coca-Cola Co.*, No. 6:14-cv-2102-Orl-40TBS, 2015 WL 3486008, at *1 (M.D. Fla. June 2, 2015); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014). Additionally, "every litigant who brings supplemental claims in [federal] court knowingly risks the dismissal of those claims." *Ameritox*, 803 F.3d at 539.

Given the relatively early stage of the proceedings and the lack of response by Plaintiff, it appears that the relevant factors weigh against exercising jurisdiction. Count III will be dismissed.

## IV.  CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Defendant's Motion to Dismiss (Doc. 20) is **GRANTED**.

    a.  Counts I and II are **DISMISSED with prejudice**.

    b.  Count III is **DISMISSED for lack of subject matter jurisdiction**.

2.  The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on March 27, 2026.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record